UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WANJING YU,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY
DETENTION CENTER, et al.,

Respondents.

No.  1:26-cv-04075 DJC AC

FINDINGS & RECOMMENDATIONS

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging her detention by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE").  ECF No. 1.  Petitioner argues, among other claims relating to the circumstances of her arrest at her affirmative asylum interview in November 2025, that detention without a pre-deprivation hearing violated her due process rights under the Fifth Amendment.  Id. at 12-20; ECF No. 10 at 5-6.  The court agrees.  As discussed below, the court recommends that petitioner's request for habeas relief be granted, and that petitioner be immediately released from custody.

I.    Factual Background

Petitioner was admitted to the United States as a non-immigrant visitor with her parents on October 5, 2019, with authorization to remain in the country until April 4, 2020.  ECF No. 1 at 3, 6, Exs. A-B.  A few months after the expiration of her authorized status, petitioner's parents

1

filed a timely application for asylum based on their fear of persecution and torture, and petitioner was included on that application as a derivative based on her status as a minor.  Id. at 6, Ex. A. Petitioner was issued an employment authorization document ("EAD"), or work permit, permitting her to work lawfully in the United States while her asylum application was pending. Id.

On August 23, 2025, petitioner was arrested for an alleged violation of California Penal Code § 245(a)(1), assault with a deadly weapon other than a firearm.  ECF No. 1 at 7.  However, the county district attorney's office declined to press charges.  Id.  As far as the court is aware, petitioner has no other criminal history.

On November 13, 2025, petitioner was detained by ICE while attending her affirmative asylum interview with her parents.  ECF No. 1 at 4, Ex. A.  Petitioner was separated from her parents, and escorted to a different room where five ICE officers interrogated and then detained her without first serving her with a warrant, notice, or other opportunity to respond and present evidence before a neutral adjudicator.[1]  Id. at 6-7.  On November 21, 2025, respondents issued a superseding Notice to Appear and initiated removal proceedings.  Id. at 26.

Petitioner did not receive a pre-deprivation hearing in November 2025.  Two months later, at a January 7, 2026 custody redetermination hearing, the immigration judge denied bond, finding that petitioner was a danger to the community based on her past arrest.  ECF No. 9-2 at 1-2. Petitioner did not appeal the decision, although her motion for reconsideration – filed with assistance of prior legal counsel – was rejected as improperly filed.  On February 24, 2026, petitioner was denied bond at a second custody redetermination hearing on the grounds that she posed a flight risk.  Id. at 3-4.  See also Yu v. Noem, No. 1:25-CV-2040 DJC AC, 2026 WL 1042213, at *1 (E.D. Cal. Apr. 17, 2026), report and recommendation adopted, No. 1:25-CV-2040 DJC AC, 2026 WL 1188854 (E.D. Cal. Apr. 30, 2026).

On June 17, 2026, the immigration judge denied petitioner's request for asylum and entered an Order of Removal (ECF No. 11), which petitioner has appealed to the Board of

---

[1]  Respondents do not allege that exigent circumstances, such as an imminent threat of flight or danger to the public, existed at the time of petitioner's arrest.  ECF No. 9.

Immigration Appeals ("BIA") (ECF No. 12).  She is currently detained at the California City Detention Facility.  Id. at 4.

II.    Procedural History

As noted above, petitioner was never provided a pre-deprivation hearing.  With assistance from different legal counsel, petitioner filed a habeas petition on December 24, 2025 in Case No. 1:25-cv-02040 DJC AC.  At two post-deprivation hearings in January and February 2026, she was denied bond by the immigration judge ("IJ").  She filed a First Amended Petition in February 2026 challenging the IJ's reliance on her prior arrest as evidence of dangerousness because petitioner was never charged with a crime.  See Yu v. Noem, No. 1:25-CV-2040 DJC AC (ECF No. 12 at 5-6).  On April 30, 2025, this court dismissed the habeas petition without prejudice based on petitioner's failure to exhaust her claims relating to the IJ's bond determination before the BIA before seeking federal habeas review.  Id. (ECF No. 18 at 4-6).

On May 27, 2026, with assistance of new legal counsel, petitioner filed the instant federal habeas petition raising different grounds for relief pertaining to the circumstances of her arrest and detention without a pre-deprivation hearing.  ECF No. 1.  Specifically, petitioner alleges (1) detention in violation of her substantive due process rights (claim one); (2) detention in violation of her procedural due process rights based on the lack of pre-deprivation notice and an opportunity to be heard (claim two); (3) unreasonable search and seizure (a warrantless arrest) in violation of the Fourth Amendment (claim three); (4) violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) which prohibit warrantless arrests without reason to believe an individual is a flight risk (claims four and five); and (5) a "non-statutory ultra vires action" under the Accardi doctrine to set aside agency action that violates agency procedures, rules, or instructions (claim five).  Id. at 12-20.  Petitioner asks the court to grant habeas relief "on the ground that Petitioner's continued detention violates the Due Process Clause, the INA, and Respondents' own regulations, and order Petitioner's release."  Id. at 20.

Respondent filed an Answer on June 11, 2026, arguing that petitioner's "second petition should be dismissed" as her current claims challenging her initial detention and continued custody are "successive and unexhausted" and constitute an abuse of writ.  ECF No. 9 at 1 (citing

3

McCleskey v. Zant, 499 U.S. 467, 494–95 (1991) and Calderon v. U.S. Dist. Ct. for Cent. Dist. of California, 163 F.3d 530, 538 (9th Cir. 1998), abrogated on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003)).  If the court elects to consider the merits of the petition, respondent argues that ICE "may arrest a noncitizen before or at charging under 8 C.F.R. § 287.5" and therefore petitioner's claims alleging an unlawful and warrantless arrest are meritless.  Id.  Petitioner filed a traverse on June 16, 2026, arguing that this petition is neither successive nor an abuse of the writ under McCleskey, and that her November 2025 arrest without a warrant, notice, or pre-deprivation hearing violated her due process rights.  ECF No. 10 at 5-6.

III.    Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

IV.    Discussion

A.  The Instant Habeas Petition is Not an "Abuse of the Writ"

Respondents contend that because the factual predicate for petitioner's current claims relating to her arrest and re-detention existed when her prior habeas petition was filed in December 2025, the instant petition must be dismissed pursuant to the abuse of writ doctrine.  ECF No. 9 at 3.  The court disagrees.

"Generally, the abuse of the writ doctrine 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'"  Petrocelli v. Angelone, 248 F.3d 877, 884 (9th Cir. 2001) (quoting Calderon v. United States Dist. Ct., 163 F.3d 530, 538 (9th Cir. 1998) (en banc)).  When considering the abuse of the writ doctrine in a section 2241 proceeding, AEDPA's second or successive provisions do not govern, but "inform [judicial] consideration."  Calderon v. Thompson, 523 U.S. 538, 558 (1998).  "[A]pplication of the doctrine

4

'should be expected to yield a resolution in harmony with AEDPA.'" Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 442 (3d Cir. 2021) (quoting Calderon, 523 U.S. at 558).  The Ninth Circuit has recognized that the common law doctrine of the abuse of the writ doctrine may apply to successive habeas petitions challenging immigration detention filed pursuant to § 2241.  Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011) ("Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain that claim.").

In McClesky, the Supreme Court examined the scope and procedure of the abuse of the writ doctrine.  When a prisoner files a second or subsequent habeas petition, the government bears the burden of pleading abuse of the writ by noting, with clarity and particularly, petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ.  499 U.S. 467, 494-95 (1991).  The burden to disprove abuse then shifts to petitioner.  Id.  If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.  Id.

Here, the government has met its initial burden of pleading an abuse of the writ.  ECF No. 9 at 3-4.  The burden therefore shifts to petitioner to show cause for failing to include claims in her earlier petition or establish that a fundamental miscarriage of justice would result from failure to entertain her claims.  The court finds that petitioner has met this burden.

As a threshold matter, the court acknowledges that petitioner's first habeas petition (filed by different legal counsel) was a model of neither clarity nor accuracy.  Petitioner also contends, and the court agrees, that ineffective assistance of prior counsel can constitute "cause" to excuse a petitioner's failure to present certain arguments in her earlier petition.  ECF No. 10 at 3.

More importantly, however, her current petition raises distinctly different claims than her first, which focused entirely on the merits of her post-arrest bond redeterminations hearings before immigration judges.  See Yu v. Noem, No. 1:25-CV-2040 DJC AC (ECF No. 12 at 5-6 &

5

18 at 2-3).  By contrast, in the instant petition, petitioner alleges that the circumstances of her arrest and detention violated her constitutional rights because she was at liberty in the United States under supervision for several years, and that she was therefore subject to section 1226(a), and not section 1225(b) or section 1226(c).  ECF No. 1 at 11-15.  The instant petition does not challenge the outcome of her post-deprivation bond hearings and focuses only on the legality and constitutionality of her arrest and ongoing detention.[2]  Even with stronger legal representation, petitioner could have potentially included some of the grounds she now pursues in her earlier petition – but not all of them.  New facts have emerged since her December 2024 petition (including claims that arose from the passage of time) giving rise to additional arguments relating to the prolonged duration of petitioner's eight-month confinement without a pre-deprivation hearing.  Id. at 14 ("Petitioner's determination is also presumptively unlawful as it has exceeded six months and is unlikely to end in the next two to three years as her parents' case is decided."); ECF No. 10 at 6 (citing the "due process violation" arising from what "has become prolonged, indefinite detention exceeding six months (and counting), causing severe, ongoing harm").

Finally, as petitioner correctly points out, respondents' own recent (and sweeping) policy changes have caused rapid and unprecedented legal developments in the relevant immigration caselaw.  ECF No. 10 at 7 ("This evolving body of law – applying Mathews to require pre-deprivation safeguards in immigration detention contexts – was not fully developed or litigated in the prior petition.").  Petitioner's habeas petition in Case No. 1:25-cv-02040 DJC AC—focusing on her bond redetermination hearings—was dismissed without prejudice.  It would be a miscarriage of justice to penalize petitioner for refining her legal claims in a subsequent habeas petition and citing applicable authority to support her claims for relief.

---

[2]  As petitioner's current claims do not relate to the bond decisions, respondents' contention that petitioner's claims are "unexhausted" because "she hasn't appealed any of the bond denials" is misplaced.  ECF No. 9 at 4-5.  The BIA lacks jurisdiction to adjudicate petitioner's constitutional claims, such as the alleged Fifth and Fourth Amendment violations.  In this context, this court has consistently waived prudential exhaustion.  See e.g., Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies.").  Relief from the prudential exhaustion requirement is also warranted to prevent further delay.

Accordingly, the court is not persuaded that the abuse of the writ doctrine bars the court's consideration of the instant petition, as petitioner has established cause for failing to include any claims that could have potentially been presented in Case No. 1:25-cv-02040 DJC AC.  The undersigned will therefore turn to the merits of the petition.

### B.  Merits of Petition

#### 1.  Violation of the INA

As noted above, subsumed within petitioner's argument that her current detention violates her right to due process is a claim that her detention violates the INA because she is subject to § 1226, not § 1225(b)(2) or section 1226(c).  ECF No. 1 at 11-15.  Because petitioner's due process argument relies in part on which section is applicable to her, the court will address this issue first.  With respect to the authority for petitioner's detention, the parties dispute whether petitioner is subject to § 1226, as petitioner claims (ECF No. 1 at 11-12), or § 1225(b)(2), as the respondents claim (ECF No. 9 at 6).  The central question in resolving this dispute, as in an overwhelming number of other cases currently proceeding in this court, is whether petitioner is an applicant "seeking admission."

8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain "an applicant for admission."  Section 1225(a)(1) defines "an applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).  "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).  Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded.  Id.  Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."  Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released."  Id. at 300.  Accordingly, there is

7

no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97. By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288). It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924 EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025).

In this case, petitioner contends that because she was already present in the country, § 1226(a) applies to her and entitles her to the procedures for detention it mandates. ECF No. 1 at 11-15. Respondents argue that petitioner is properly detained under § 1225(b)(2) but do not offer a basis for her detention under § 1225(b)(2) other than DHS's new statutory interpretation that this provision applies broadly to all noncitizens, including petitioner, who are present in the United States and have not been admitted. ECF No. 9 at 6.

The legal arguments relied upon by the government have been consistently rejected by a majority of the courts across the country.

> By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

Barco Mercado v. Francis, No. 25-cv-6582 LAK, __ F. Supp. 3d __, 2025 WL 3295903, at *4 &

App'x A (S.D.N.Y. Nov. 26, 2025) (collecting cases); Contreras-Cervantes v. Raycraft, No. 2:25-cv-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States.  The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).") (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country."  Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases); see also Lepe v. Andrews, No. 1:25-cv-1163 KES SKO, __ F. Supp. 3d __, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) ("The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.") (collecting cases).  Indeed, respondents fail to acknowledge the wealth of authority contrary to their position. ECF No. 9.

The undersigned agrees with the well-reasoned and persuasive decisions by the overwhelming majority of courts that have addressed this issue, and rejects the government's new interpretation of § 1225 as the applicable immigration detention authority for all inadmissible noncitizens.  Like these courts, the undersigned finds that § 1226(a), rather than § 1225(b)(2)(A), applies to a non-citizen, like petitioner, who is already living in the United States.

For these reasons, the court finds that respondents have violated the INA by improperly subjecting petitioner to mandatory detention under § 1225(b).

### C.   Due Process

Petitioner further argues that her indeterminate detention without a pre-deprivation hearing violates due process. ECF No. at 11-15.  Petitioner has resided within the United States since October 5, 2019, and it is undisputed that she is not subject to mandatory detention based on

9

criminal history pursuant to § 1226(c).  Respondents argue that because petitioner is a noncitizen "seeking admission" she is subject to mandatory detention under § 1225(b)(2) and therefore not entitled to any process.  ECF No. 9.  The undersigned rejects respondents' argument for the reasons set forth above.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Petitioner was permitted to pass through our gates and, as a person who has been living within the United States for years who has repeatedly been granted authorization to work lawfully in this country, she is entitled to Due Process under Zadvydas v. Davis, 533 U.S. 678, 687 (2001).  See Barbosa da Cunha, 2026 WL 1146044, at *15; Guaman Carlozama v. Warden of the California City ICE Det. Facility, No. 1:26-cv-1702 TLN CKD, 2026 WL 1042586, at *2 (E.D. Cal. Apr. 17, 2026).  The government's previous decision not to detain petitioner, and to give her permission to pursue employment within the United States while her family's asylum applications were pending, created a protected liberty interest in her continued release.

Having determined that a liberty interest exists, the court must now examine what process is due.  See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first Mathews factor, petitioner has a strong private interest in remaining free from detention.  Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  Petitioner was out of custody for over six years prior to her detention, and held a valid work authorization.  Petitioner asserts (and respondents do not dispute) that she has never been charged with a crime.  This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. The risk of erroneous deprivation is high where a petitioner does not receive a pre-detention hearing to determine whether there is a valid basis for detention.  See Anderson v. Chernut, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026).  Petitioner "was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination."  Noori v. LaRose, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025); see 8 C.F.R. § 212(e)(2)(i) (requiring written notice of termination of parole); see also 8 C.F.R. § 287.8(2) (requiring a warrant for arrest unless the person is likely to escape prior to arrest) and 8 C.F.R. § 287.3 (requiring examination of the arrestee and notification of the reason for his or her arrest when a person is arrested without a warrant).  Nothing in the record before the court suggests that an arrest warrant was issued for petitioner nor that petitioner was given notice of the reason for her detention when she was detained by immigration authorities in November 2025.

While petitioner was provided a Notice to Appear for removal proceedings, that notice simply states that petitioner is removable because she overstayed her B-2 visitor authorization. ECF No. 9-1 at 6, 10.  The notice does not provide a reason for petitioner's detention.  Similarly, the November 13, 2025 Notice of Custody Determination provided no reason for her detention by ICE.  ECF No. 9-1 at 16.  Petitioner was then held in immigration detention for two months

11

without any form of custody determination hearing.  In fact, petitioner was not provided a bond hearing until January 2026, a few weeks *after* she requested federal habeas relief from this court in Case No. 1:25-cv-02040-DJC-AC.  When the government fails to follow its own regulations, fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing, the risk of erroneous deprivation is high.  See Anderson v. Chernut, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (noting the high risk of erroneous deprivation when the petitioner did not receive a pre-detention bond hearing); H.J.G.G. v. Wofford, No. 1:25-CV-01718-JLT-EPG, 2025 WL 3761803, at *7 (E.D. Cal. Dec. 30, 2025), report and recommendation adopted, No. 1:25-cv-01718-JLT-EPG, 2026 WL 320331 (E.D. Cal. Feb. 6, 2026) (noting the importance of a hearing before a person is deprived of their liberty interest).

Finally, while the government has an interest in enforcing its immigration laws, the government's interest in detaining petitioner without a pre-deprivation hearing is low.  See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  As "many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing."  Hasratyan v. Bondi, et al., No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026).

Respondents contend that petitioner received all the process due to her because she received two post-deprivation bond hearings.  ECF No. 9 at 7.  But the court disagrees.  A post-deprivation hearing provided two months after her detention (and only after she sought federal habeas relief) does not satisfy due process.  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see also Zinermon v. Burch, 494 U.S. [113, ]127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty").  Courts typically require evidence of urgent concerns or an especially strong government interest

12

to justify a post-deprivation hearing.  See Guillermo M. R. [v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); United States v. James Daniel Good Real Prop., 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).  Here, respondents have not argued that they had a valid governmental interest which justified postponing a hearing until well after petitioner's detention.  Further, many district courts in this circuit have determined that petitioners who have been previously released are entitled to pre-deprivation bond hearings.

While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose "as-applied due process challenges to § 1226(a)." Perez Bueno v. Janecka, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1214 (9th Cir. 2022)).  In Perez Bueno, considering the specific context where a petitioner "was released from civil immigration detention after his initial apprehension and is now re-detained," the court determined that due process requires notice and a pre-deprivation hearing before detention, and that the proper remedy for a failure to provide such process is immediate release from detention.  Id. at *3–4.  Other courts, including this one, have similarly concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing.  See e.g., Anderson, 2026 WL 809990, at *3; Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

Finally, at a pre-deprivation bond hearing where the petitioner has obtained a liberty interest in their continued release, the government bears the burden of proving by clear and convincing evidence that petitioner is a danger to the community or a flight risk.  H.J.G.G., 2025

13

WL 3761803, at *9 (citing Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024)); see also J.E.H.G. v. Chestnut, et al., No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). While this court is not reviewing petitioner's prior bond hearings, it is worth emphasizing that depriving a petitioner of a pre-deprivation hearing —with the associated standard of proof for detention —is not easily remedied.

Based on the foregoing, the court finds that petitioner's detention absent a pre-detention bond hearing where respondents would bear the burden to show that petitioner is either a flight risk or a danger to the community violated due process. Petitioner is therefore entitled to habeas relief under the Mathews factors. Because respondent does not assert an alternative lawful basis for petitioner's detention, the court recommends that petitioner be released from custody. The court therefore declines to address petitioner's additional claims seeking the same or similar relief (i.e., petitioner's immediate release).[3]

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED as follows:

    a. Respondents shall IMMEDIATELY RELEASE petitioner WANJING YU, A-216-308-737. At the time of release, respondents must return all of petitioner's documents and possessions.

    b. Respondents are ENJOINED AND RESTRAINED from attempting to re-detain petitioner unless they comply with the requirements under 8 U.S.C. § 1226(a), the

---

[3] See N.K. v. Noem, No. 1:26-cv-00292-KES-SAB (HC), 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

14

Constitution, and any other laws or treaties of the United States.

c. The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

d. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 8, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE